IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KELLIE LEHOUILLIER,

                                                                           OPINION AND ORDER

                Plaintiff,

                                                                           14-cv-52-bbc

     v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Kellie Lehouillier is seeking review of a final decision by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying her claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge who decided the case concluded that plaintiff suffered from the severe impairments of asthma, post femur fracture, congenital cardiac conditions and ulnar nerve neuropathy at the elbows but retained the residual functional capacity to perform limited sedentary work with frequent but not constant fingering, the option to stand for five minutes every hour and no exposure to respiratory pollutants. Plaintiff contends that the administrative law judge erred in rejecting the limitations assessed by her treating physician, Dr. Andrew Floren. (Although plaintiff also mentions in passing that the administrative law judge improperly rejected the opinion of another physician, Dr. Donald Dexter, she admits that the only issue on appeal is whether the adjudicator properly

1

considered Dr. Floren's findings. Dkt. #14 at 13-14.) Because I find that the administrative law judge provided good reasons for rejecting Dr. Floren's opinion, I am denying plaintiff's motion for summary judgment and affirming the commissioner's decision.

The following facts are drawn from the administrative record (AR):

RECORD FACTS

Plaintiff was a 38 year-old high school graduate on October 3, 2008 when she slipped and fell on some food trays while working at Culver's in River Falls, Wisconsin. She fractured her right femur and underwent surgery on that day. Dr. Andew Floren, who is in occupational health at the Mayo Clinic in Eau Claire, saw plaintiff on October 30, 2008. AR 296. Although Dr. Floren wrote that "[i]t is hopeful that over the next several months, she will get to where she can ambulate some and then we will talk about getting back to work," plaintiff expressed her hesitancy to return to work and was considering trying to get on social security for various other issues, including heart disease. AR 297-98.

On July 21, 2009, Dr. Floren noted that plaintiff was healing well but continued to complain about significant pain and was working only two hours a day. AR 378. On December 7, 2009, plaintiff told Dr. Floren that she was working five hours a day but had continuing pain and swelling, especially with walking or standing. AR 513. Dr. Floren observed that:

> The patient grimaces and exclaims pain with lightest touch ubiquitously throughout the femur, knee, right foot, and ankle. She says her right foot and ankle is swollen, but I can appreciate no real swelling. The foot, ankle, and knee all move well.

2

>                             *   *   *
>
> I looked at the x-rays together. They show very good osseous healing and remodeling.
>
>                             *   *   *
>
> I am really at a loss to explain her foot and ankle problems. . . . We will keep her at light duty five hours a day.

AR 514.

Following consultations with her other physicians, plaintiff had the screws removed from her ankle on February 18, 2010. AR 479. During a follow-up appointment with Dr. Floren on April 16, 2010, plaintiff reported improvement but complained of a stabbing pain in her knee when kneeling and of discomfort while walking on uneven surfaces. AR 475. Dr. Floren's examination revealed normal findings. He wrote that plaintiff "was about as good as she is going to get" and merits a workers' compensation impairment rating of 10% for her discomfort and her permanent work restrictions, which included rare kneeling and occasional standing and walking on rough or uneven surfaces. AR 476.

On September 24, 2010, Dr. Floren noted that plaintiff was "most insistent that Dr. Rozich does not want her to ever work again and is strongly desiring that somehow I get her on Social Security Disability. I tried to tell her several times that I am unable to do that but she was very insistent." AR 464. He wrote that plaintiff believed she was disabled primarily because of her congenital heart disease for which she had undergone surgeries in 1972 and 1997. AR 465. At this visit, plaintiff did not report having pain in her leg or ankle but stated that her right leg hurts from time to time for no apparent reason. Id. Dr. Floren

wrote that "[s]he has no symptoms currently. She simply is insistent she cannot work and that she needs to get on Social Security Disability." Id. He stated that "[a]s far as her heart is concerned I note that the patient was working 40 hours a week at Culvers up through two years ago when she fractured her femur." AR 469. Apart from rare kneeling and walking on uneven surfaces and not standing or walking more than 1/3 of the time, Dr. Floren opined that plaintiff's condition did not merit any other work restrictions. Id. He reported that he "simply gave [plaintiff] a piece of paper that she should not be working based on her multiple issues but again it is unclear what the specific objective criteria in work restrictions should be (if any) other than stated above." Id.

In a progress note dated January 13, 2012, Dr. Floren wrote that plaintiff was in for an occupational medicine consultation at the request of another physician, Dr. Rozich, who believes that plaintiff is totally disabled. AR 861. He notes that he has not seen plaintiff since September 24, 2010. Dr. Floren wrote that:

> Patient believes she is disabled for multiple reasons including the following:
>
> 1. Leopard syndrome, congenital cardiac condition. . . .
>
> 2. Arnold-Chiari syndrome. Patient states that this gives her burning pain in the neck as well as headaches.
>
> 3. Low back pain due to a "cracked pelvis." . . .
>
> 4. . . . [S]piral femur fracture with intramedullary nail. . . .
>
> 5. Bilateral ulnar neuritis. . . .
>
> 6. Obstructive sleep apnea, on CPAP machine.
>
> 7. Asthma. . . .

4

8. Depression.

9. History of vitamin D deficiency on replacement therapy.

10. Poor dentition with receding gum lines.

Patient is accompanied by her husband and agrees with the history as stated above. AR 861-62.

Dr. Floren did not note any abnormalities on his physical examination of plaintiff except for a holosystolic ejection murmur in her heart and rhonchi (rattling respiratory sounds) and an increased E:1 ratio (related to airway pressure). Without further explanation, he assessed plaintiff with a total disability and restricted her to no more than three hours of activity per day; lifting no more than 15 pounds five-percent of the time; rare standing or walking; no repetitive motion or torquing with either hand; no pinching or climbing; limited overhead or outstretched work; and missing one or two days per week due to fatigue. AR 863.

OPINION

It is a well-settled rule that a treating physician's medical opinion is entitled to controlling weight if it is supported by objective medical evidence and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013); Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004). Although an administrative law judge is not required to afford a treating physician's opinion controlling weight, he is required to provide a sound explanation for rejecting it. Roddy, 705

F.3d at 636. See also Beardsley v. Colvin, 758 F.3d 834, 839 (7th Cir. 2014) ("The problem in this case is that the ALJ did not provide a valid explanation for preferring the record reviewer's analysis over that of the agency's examining doctor.").

In his October 1, 2012 written decision, the administrative law judge found that plaintiff retained the residual functional capacity to perform a limited range of sedentary work. AR 28. He gave the following reasons for not incorporating all of the 2012 limitations assessed by Dr. Floren:

1. Dr. Floren was considering plaintiff's immediate past work in the context of a workers' compensation claim and not social security disability. When he limited plaintiff to three hours of activity a day, he was considering her fast food work where she had been on her feet six hours a day.

2. Dr. Floren expressed concerns in September 2010 about plaintiff demanding that he find her disabled, and his 2012 opinion appears to be designed to placate a demanding patient.

3. The restrictions assessed by Dr. Floren in 2012 are not supported by objective evidence because during that visit, he found that plaintiff had a normal gait and station, regular heart rate and rhythm, normal reflexes and reasonably good motion in all joints.

4. Plaintiff's reports of leg pain were consistent with being able to stand or walk for two hours a day, which was the primary limitation assessed by Dr. Floren in 2010.

With respect to the first reason, plaintiff argues that there is no evidence in the record that Dr. Floren was considering plaintiff's past work and that he specifically states in both the 2010 and 2012 progress notes that "[t]his is not a workers' compensation injury claim" and that Dr. Rozich sent plaintiff "for occupational medicine consultation." AR 464, 861. Plaintiff is correct. (It appears that the administrative law judge may have been confused

because Dr. Floren had seen plaintiff in 2009 with respect to her workers' compensation claim. AR 372-73, 377-78 and 386-87.) Dr. Floren also does not suggest in his 2012 opinion that limiting plaintiff to three hours of activity applies only to plaintiff's past work as a fast food worker. However, even though the administrative law judge may have erred in characterizing the reason for Dr. Floren's consultation, he provided other good reasons for not adopting the significant limitations assessed by Dr. Floren. Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). See also Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008) ("An ALJ need not detail every reason for discounting a treating physician's report.").

The administrative law judge noted correctly that in September 2010, Dr. Floren expressed concerns that plaintiff was insisting that she could not work and that she needed to get on Social Security disability benefits, even though Dr. Floren noted that plaintiff was not experiencing any symptoms at the time and did not need significant work restrictions. Dr. Floren did not see plaintiff again until January 2012, when he assessed very restrictive limitations. As noted by the administrative law judge, Dr. Floren did not explain the drastic change in his opinion, and his physical examination revealed mostly normal findings. Plaintiff points out that Dr. Floren listed several of her medical conditions that he failed to mention in his 2010 report, including Leopard syndrome, Arnold-Chiari syndrome, low back pain due to a cracked pelvis and bilateral ulnar neuritis. She suggests that this means that

7

Dr. Floren made a more thorough analysis of her medical record in 2012 than he did in 2010. However, Dr. Floren did not offer his opinion or make any independent findings regarding these conditions. He made clear that plaintiff merely had recited her own medical history, stating that she "believed that she was disabled" because of those conditions and that her husband "agrees with the history." Although plaintiff also cites various records from other providers dated 2009 and 2010 that corroborate the conditions listed in Dr. Floren's 2012 report, there is no indication that Dr. Floren reviewed these records or that they had any effect on his 2012 opinion. (I note that plaintiff relies heavily on the findings and statements of Dr. Rozich, who found her "disabled"; however, she does not challenge the administrative law judge's rejection of Dr. Rozich's opinion.) As a result, it was reasonable for the administrative law judge to conclude that Dr. Floren's objective findings did not support his 2012 opinion that plaintiff could be active only three hours a day.

ORDER

IT IS ORDERED that plaintiff Kellie Lehouillier's motion for summary judgment, dkt. #13, is DENIED and the decision of defendant Carolyn Colvin, Acting Commissioner of Social Security, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 13th day of January, 2015.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge